# The Toledo, Wabash and Western Railway

# Company

### *v.*

# Miner T. Chew.

1. SALE—*liability for property appropriated, for its value.* Where a railroad company takes and applies, to its own benefit, ties, delivered upon the line of its road by the plaintiff, it will be liable to the latter in *indebitatus* assumpsit for their value; and in such case, it matters not whether the person who procured their delivery was the agent of the company or of its contractors.

2. SAME—*evidence to show acceptance.* Where the plaintiff had delivered a lot of ties along the line of a railroad then in process of construction, which he claimed was under a contract with the railroad company, in a suit to recover the value of the same, the court admitted evidence that the company used some of the ties after the commencement of the suit: *Held*, that the evidence was proper, as tending to prove an acceptance by the company.

3. SAME—*evidence to show with whom contract was made.* In a suit against a railroad company to recover the price and value of ties furnished, the company offered in evidence a copy of a blank, shown the plaintiff by its engineer, for the purpose of proving that the contract was made on behalf of certain contractors named in the blank. The blank contract was not executed by the parties, and was exhibited to the plaintiff to inform him of the length and size of the ties: *Held*, that the blank was not admissible as evidence to prove the contract was made by the plaintiff with the contractors.

4. EVIDENCE—*certified copy of articles for consolidating railroad companies.* A copy of the articles of consolidation of railroad companies, executed in due form, duly certified by the Secretary of State that the same is a true copy, is admissible in evidence.

5. AGENCY—*ratification of agent's act.* Where there was evidence tending to show that a party, bargaining for railroad ties, was acting as the agent of a railroad company, and it appeared that the company, when it accepted the road from its contractors, used the remaining ties, left by the seller, upon the road, it was *held*, that it might be inferred that the agent's contract was approved by the company.

6. SALE—*when complete so as to pass title.* Where, by the terms of an agreement for the sale and delivery of ties for a railroad, they were to be

estimated before payment, it was *held*, that the sale was not complete until estimation, and the ties unestimated continued the property of the vendor.

7. Remedy—*when a tort may be waived and a recovery had upon an implied contract.* If one commits a tort on the goods of another by which he gains a pecuniary benefit, as, if he wrongfully takes the goods and sells them, or otherwise applies them to his own use, the owner may waive the tort and charge him in assumpsit on the common counts, as for goods sold, or for money received.

8. Where a party had delivered ties in pursuance of a contract with parties constructing a railroad, upon the line of the road, a portion of which were estimated and paid for by the contractors, and the company, after accepting the road, consolidated with another railroad company, when the consolidated company took and used the unestimated ties, it was *held*, that such consolidated company, even though guilty of a tort, was liable to the owner for the ties thus appropriated to its use.

Appeal from the Circuit Court of Macon county; the Hon. Arthur J. Gallagher, Judge, presiding.

This was an action of assumpsit, by Miner T. Chew, against the Toledo, Wabash and Western Railway Company. The declaration was for ties sold and delivered. The plaintiff recovered judgment for $600, from which the defendant appealed. The facts necessary to an understanding of the case, are stated in the opinion of the court.

Messrs. Nelson & Roby, for the appellant.

Messrs. Eden & Odor, for the appellee.

Mr. Justice Thornton delivered the opinion of the Court:

This action was brought to recover the value of ties, alleged to have been furnished to the railroad company.

We can not reverse upon the evidence. The proof shows, beyond any cavil, that the company took, and applied to its own benefit, ties delivered upon the line of railroad while it was in process of construction, by the plaintiff.

In the view we are constrained to take, it matters not whether Lincoln was the agent of the contractors, or of the

Decatur and East St. Louis Railroad Company, which consolidated with the appellant company. According to the evidence, the liability of the latter would still exist.

We shall, therefore, notice the alleged errors of law.

It was not error to admit testimony that the company used the ties after the commencement of the suit. They were upon the right of way, and the question to be determined was, the acceptance on the part of the company. The plaintiff had delivered the ties upon the line of road before the institution of the suit, and this evidence tended, at least, to prove an acceptance by the company.

The refusal of the court to admit evidence offered in behalf of the company, is the second assignment of error.

Lincoln testified that plaintiff came to see him about furnishing ties, and he showed, or gave to him, a blank containing specifications as to size. He then exhibited to the court a printed blank, and said that he did not know that it was the identical blank shown to plaintiff, but it was either that one, or one like it, from the same lot of blanks. The court refused to permit this paper to be read to the jury.

It is not claimed that this paper constituted any part of the contract, and unless it had been executed by the parties it was incompetent evidence to prove that the agreement was made by plaintiff with Knox & Co. The witness testified that he produced the blank when the question as to the size of the ties came up. Its exclusion did no harm in this regard, for the witness testified as to the length and width of the ties required, and the kind of timber they should be. For the purpose of showing that the contract was with Knox & Co., the paper was wholly inadmissible. The witness, in his testimony, did not pretend that he exhibited it to the plaintiff for any such purpose.

The court did not err in permitting a copy of the articles of consolidation, certified by the Secretary of State, to be read in evidence.

The act to enable railroad companies to consolidate, provides, "That each consolidated company shall file for record, in the office of the Secretary of State, a copy of their articles of consolidation, evidenced by the signature of the presiding officer of each of the said companies, and the corporate seal thereof." Sess. Laws of 1854, sec. 2, p. 9.

The paper introduced was signed as required by law, by the presidents of the respective companies, and had the corporate seals affixed ; and there was attached the certificate of the Secretary of State that the paper was a true copy of the articles of consolidation between the two companies, then on file in his office.

The objection made is, that, as the law only requires a copy to be filed, the paper produced was only a copy of a copy, and but secondary evidence, and therefore incompetent.

We can not so construe the statute.   It is true, it says that a copy must be filed, but it must be evidenced by the signature of the presiding officer, and authenticated by the corporate seal.   When thus evidenced, it would not be a copy, but the original instrument repeated.   The evident intent of the law was, that duplicates would be made of the articles, one to be retained by the company in which the whole property and stock were merged, and the other to be deposited in the office of the Secretary of State.   Besides, the paper produced, both upon its face, together with the signatures of the officers and the attestation by the secretaries of the companies, with the corporate seals, as well as the certificate of the Secretary of State, proved that it was a copy of the original.

Was the copy evidence ?   The statute provides that copies of all papers and writings, required by law to be deposited in the office of the Governor or Secretary of State, when properly certified, shall be received in evidence with like effect as the originals.   Sess. Laws, 1869, p. 399.   The language of this act is sufficiently comprehensive to embrace the paper offered in evidence.

It is claimed that the first instruction for plaintiff is wrong, as not having been based upon the evidence.

There was evidence tending to prove that Lincoln was the agent of the first company, and when it accepted the road from the contractors, with the ties upon the line of road, and used them, the inference might be indulged that the agreement with Lincoln was approved.

We do not perceive the force of the objection taken to the second instruction. If the agreement was that the ties were to be estimated before payment, then the sale was not complete until estimation, and the ties unestimated by the contractors would continue to be the property of the plaintiff, and the company would be liable for their value if it wholly appropriated them to its use.

The third instruction is unobjectionable. It is to the effect that, if Knox & Co. paid plaintiff for a portion of the ties furnished and delivered on the line of the railroad, and that plaintiff delivered other ties under the contract which were to be estimated before the sale was consummated, and when the road was completed and possession taken by the company, the unestimated ties had not been paid for by Knox & Co., and the railroad company took possession of them and converted them to its use, and thus made them a part of its road, it would be liable for the ties so used.

This instruction does not assume that plaintiff had the right to perpetrate a fraud on Knox & Co., acknowledge the fraud, abandon an express contract, and recover in an action *ex contractu* for a tort. It assumes, on the contrary, a failure on the part of Knox & Co. in not estimating the ties, and the contract not having been complied with, the ties remained the property of the plaintiff, and the company, so far as it appropriated them, incurred a liability.

The fourth instruction is substantially the same.

The theory upon which the plaintiff must have recovered, and was entitled to recover, was, that he had delivered ties, in pursuance of a contract with the parties constructing the road,

upon the line of the Decatur and East St. Louis Railroad; that some of them were estimated and paid for by the contractors; that, when the Decatur and East St. Louis Railroad Company accepted the road from the contractors, and when the consolidation was effected, unestimated ties, the property of the plaintiff, were upon the line of road, and were taken and used by the appellant corporation. Some of them were placed upon the road-bed, and some were used as wedging in making repairs.

Was the company liable for the ties thus used? They were wholly converted to the use of the company, became a part of its road, and could not readily be separated therefrom. Some of them were imbedded in the earth and the iron spiked upon them, and others were split up and driven under the ties imbedded. There could be no more complete conversion and appropriation of the property of the plaintiff. They were not taken to be converted into money, but for the construction and repair of the road, and were effectually converted into money's worth. They were delivered to be used upon the road, and were thus used; and though the taking may have been, to some extent, tortious, the plaintiff might waive the tort and recover in *indebitatus assumpsit*, as the company had applied the ties to its own benefit.

Greenleaf says: "If one commit a tort on the goods of another by which he gains a pecuniary benefit, as, if he wrongfully takes the goods and sells them, or otherwise applies them to his own use, the owner may waive the tort and charge him in assumpsit on the common counts, as for goods sold or money received." 2 Greenleaf Ev. sec. 108, and note 3; *Putnam* v. *Wise*, 1 Hill, 234, and note A; *Lightly* v. *Conston,* Clouston 1 Taunton, 112.

In this last case, assumpsit was brought for the work and labor of an apprentice who had been enticed away, though case would have been most usual. Mansfield, Ch. J., remarked: "It is not competent for the defendant to answer

that he obtained the labor, not by contract with the master, but by wrong, and therefore he will not pay for it."

Neither should the railroad company be permitted to say, true the ties were taken, and they now form a part of the road, but the taking was a trespass, and payment can not be enforced by an action of assumpsit.

We are of opinion that right and justice have been subserved, and affirm the judgment.

*Judgment affirmed.*