CHICAGO—FIRST DISTRICT—MARCH, 1910.     219

Edwards v. Schillinger Bros. Co., 153 Ill. App. 219.

## John B. Edwards, Trustee, Appellant, v. Schillinger Brothers Company, Appellee.

### Gen. No. 14,978.

1. BANKRUPTCY—*liability of preferred creditor.* A creditor who
has been unlawfully preferred, upon demand of the trustee should
return the property received to the *situs* of the bankrupt within the
jurisdiction of the court exercising jurisdiction of the estate.

2. ASSUMPSIT—*when lies by trustee in bankruptcy. Assumpsit*
lies by a trustee in bankruptcy to recover goods delivered to a creditor of the bankrupt by way of unlawful preference—the action of
tort is, however, the usual remedy adopted.

ASSUMPSIT. Appeal from the Superior Court of Cook county; the
Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at
the October term, 1908. Reversed and remanded. Opinion filed
March 17, 1910.

HOYNE, O'CONNOR & IRWIN, for appellant; HARRY D.
IRWIN and CARL J. APPELL, of counsel.

McCASKILL & SON, for appellees.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion
of the court.

This is an appeal from a judgment, rendered on an
instructed verdict, of *nil capiat* and for costs.

This action is brought by plaintiff as trustee in bankruptcy of Schillinger Brothers Asphalt Company,
which had been duly adjudged a bankrupt by the Dis-

trict Court of the United States for the Eastern District of Missouri, under sections 60b and 67c of the Federal Bankruptcy Act of 1898, to recover the value of certain property conveyed by the bankrupt to the defendant within four months of the filing of the petition in bankruptcy, with the intent and purpose of hindering, delaying and defrauding its creditors.

The bankrupt and defendant were both corporations, the defendant having its principal office in Chicago and the bankrupt in St. Louis. G. A. Schillinger was the principal stockholder in both corporations, and in August, 1902, after an examination of the bankrupt's affairs in St. Louis, pronounced it in his own expressive way, a "busted community," which expression being interpreted meant that he had come to the conclusion that the bankrupt corporation was insolvent. And such conclusion was the only one that he could reasonably have arrived at from the conditions which his examination must have disclosed. On October 6, 1902, a petition to have the bankrupt corporation declared a bankrupt was filed, and thereafter an adjudication of bankruptcy entered. The schedules of the bankrupt show indebtedness of $9,166.66, with assets valued at $4,301.04. On August 1, 1902, the bankrupt was indebted to defendant for goods sold and delivered, $4,445.53. At no time since that date was the bankrupt's assets sufficient to pay or discharge its debts. On September 15, 1902, the bankrupt transferred to defendant, and defendant received, certain assets and property of the bankrupt valued at $2,316.25, for the purpose of applying the same partly upon its indebtedness to defendant. The bankrupt knew it was insolvent at the time, and intended by such transfer to give defendant a preference over its other creditors, and defendant received such property with the intent to secure a preference and with knowledge of the insolvency of the bankrupt corporation. By arrangement between these parties the defendant was to pay a note of the bankrupt for $225 and give it credit

on its account for $1,653.25. The property consisted of engines, machinery, concrete mixer, asphalt pans, etc., and was shipped to defendant and received by it at Chicago. On February 25, 1903, Edwards as trustee demanded of defendant the goods received by it from the bankrupt, which defendant informed Edwards, through its counsel, he might have if he would go to Joliet, Illinois, and Battle Creek, Michigan, and some other places to which the property had been taken, and get it. Defendant admits that the property has not been returned to plaintiff. This action was brought to recover the value of the goods constituting the unlawful preference. Plaintiff urges that the action of *assumpsit* is the appropriate action; that while a tort action was maintainable, the tort might be waived and the value of the goods recovered in an *assumpsit* action; that under the proofs plaintiff was entitled to a judgment for the value of the goods which constituted an unlawful preference.

Defendant's counsel complain that the abstract is not prepared in compliance with the court's rules, and that the cause should be affirmed for want of a sufficient abstract. The abstract is in many respects meagre and not in accord with the rule, but not sufficiently violative of the rule to justify the court in ignoring the merits and arbitrarily affirming what we have concluded is an erroneous judgment. It is not seriously disputed that the preference was made as charged in the declaration and that defendant knew of the insolvency of the bankrupt corporation at the time and received the goods as payment on its account in violation of the Bankrupt Act, *supra*.

Plaintiff being entitled to receive back the goods so transferred to defendant by the bankrupt, they should have been delivered to him under the demand made. Failure to do so constituted a conversion of the property to defendant's own use. Nor was plaintiff required to go around to one place and another wherever defendant had seen fit to deport the goods, and gather them up; but defendant was obligated to return

them to the place from which it had unlawfully taken them, and where the bankrupt had its *situs* and the bankruptcy court in which the bankrupt estate was being liquidated exercised its jurisdiction.

The Bankruptcy Act *supra* vested in the trustee the right to recover the property or its value from the person receiving it as an illegal preference within the meaning of the Act. Tort undoubtedly was an appropriate action, and is the most usual course of procedure in such cases. Still such remedy was not intended to be exclusive of all others. Plaintiff might elect as to which form of action he would pursue for the remedy which the Act confers. City of Elgin v. Joslyn, 136 Ill. 525, supported as it is by many other cases since decided, is, we think, conclusive of the right. The court lay down the rule that ''Where one wrongfully takes the goods of another and applies them to his own use, the owner may waive the tort and charge the wrong doer in *assumpsit* on the common counts as for goods sold or money received.'' Shober v. Schedler, 63 Ill. App. 48; Ward v. Montgomery, 67 ib. 346; T. W. & W. Ry. Co. v. Chew, 67 Ill. 378.

The demand for the goods was necessary in the first instance, for if the defendant had complied with the demand by returning the goods it would have discharged itself from further liability; but not having returned the goods in response to such demand, it became liable to plaintiff for their value in any form of action in which a judgment for such value could be maintained. Nor was such demand an election to proceed in any particular form of action, either for the recovery of the goods or their value. Failure to deliver left plaintiff free to proceed for their value either by a tort action or an *assumpsit* suit. Even had an action in tort been first instituted, after its discontinuance plaintiff would have had the right to prosecute an *assumpsit* action as freely as he would in the first instance. After dismissal of the tort action he would have had the same right to proceed as was open to him before the institution of such tort action.

But the *assumpsit* suit before us is the only action ever brought. Stier v. Harms, 154 Ill. 476; Gibbs v. Jones, 46 *ib.* 319; Flower v. Brumbach, 131 Ill. 646. There is nothing inconsistent between tort and *assumpsit* where the value of property is sought to be recovered. Consequently the doctrine of election has no application. In its broad sense an election operates as an estoppel; but there is nothing in this case estopping plaintiff from maintaining at any time an appropriate action by which the value of the goods is recoverable. First Nat. Bank v. Barse Com. Co., 198 Ill. 232; Bradner v. Williams, 178 *ib.* 420.

The judgment of the Superior Court will, for the reasons indicated, be reversed and the cause remanded for a new trial.

*Reversed and remanded.*